OPINION
{¶ 1} Defendant-appellant, Jack Todd, appeals his sentence in the Brown County Court of Common Pleas for forgery following a guilty plea.
 {¶ 2} Appellant was indicted in 2002 on 26 counts of forgery in violation of R.C. 2913.31(A)(2) (all fifth-degree felonies). On December 16 and 17, 2002, the matter proceeded to a jury trial. On the second day of the trial, at the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). Following negotiations and before the trial court ruled on the motion, appellant decided to plead guilty to all 26 counts of forgery. The plea agreement was recited into the record and later reduced in writing to an entry of guilty plea. The entry, which was filed on January 13, 2003 and signed by the trial court, the state, and appellant's counsel, states in relevant part that:
 {¶ 3} "Defendant further understands and acknowledges that in exchange for his pleas of guilty to all 26 counts * * * of forgery, * * * all being felonies of the fifth degree; the State of Ohio has agreed to recommend a sentence of nine (9) months in prison upon Count I and five (5) years of community control on Counts II through XXVI of the indictment, * * * that restitution be made in the amount of $6,245.00 to the victims, and the Defendant be ordered to pay all costs of the prosecution, appointed counsel fees in the amount of $250.00; and any supervision fees[.]
 {¶ 4} "Defendant further understood that the sentence recommendation of the State is merely a recommendation to the Court and that the Court is not bound by such recommendation, and has full discretion to impose any sentence permissible by law."
 {¶ 5} At the sentencing hearing on January 13, 2003, while addressing the trial court at length, appellant mentioned that "the plea bargain agreed upon was for six months[.]" The trial court stated that its recollection was that appellant "would get nine months with credit which would essentially be approximately six months in prison." Appellant's counsel and the state both agreed with the trial court's recollection. The trial court then sentenced appellant to nine months in prison on Count I with credit for time served, and five years of community control on Counts II through XXVI. A sentencing entry filed on January 31, 2003 reflects the sentence imposed by the trial court. This appeal follows in which appellant raises the following assignment of error:
 {¶ 6} "The trial court erred in sentencing appellant because the sentence imposed was not the sentence agreed to between appellant, the state of ohio, and the court."
 {¶ 7} Appellant argues that the terms of the plea agreement as reached during the plea hearing, and which induced him to plead guilty, were ambiguous. Specifically, appellant asserts that because of ambiguous and confusing statements made by the trial court at the plea hearing, he mistakenly but reasonably believed that if he pled guilty, he would be sentenced to six months in prison and three years of community control. Appellant contends that the misunderstanding should be construed against the state.
 {¶ 8} A plea agreement is contractual in nature. See UnitedStates v. Arnett (C.A. 9, 1979), 628 F.2d 1162. In order to determine whether a plea agreement has been breached, courts must examine what the parties reasonably understood at the time the defendant entered his guilty plea. State v. Vincent, Ross App. No. 02CA2672, 2003-Ohio-2591. The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement. State v. Ford III (Feb. 18, 1998), Lawrence App. No. 97 CA 32, 1998 WL 79885, at *3. Contractual language giving rise to doubt or ambiguity must be interpreted against the party who used it. Id.
 {¶ 9} "Courts naturally look with a jaundiced eye" upon any defendant seeking to invalidate a guilty plea after sentencing on the ground that he expected a lighter sentence. United States v.Crusco (C.A. 3, 1976), 536 F.2d 21, 24. "However, cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court." Id. "Where the record shows that `circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression,' a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily." Id.
 {¶ 10} The trial court started the plea hearing by noting that "the State has indicated that it would have an intention of pursuing additional charges by re-indictment if the Court should grant the Rule 29 Motion. So there is some benefit to Mr. Todd by pursuing a plea agreement which has been fashioned here this afternoon. * * * And it's my understanding there will be a plea agreement as to all twenty-six (26) counts of this Indictment with a recommendation to the Court." The state then recited the terms of the plea agreement as follows:
 {¶ 11} "The Defendant would enter a plea of Guilty to each of the 26 counts of this Indictment[.] In exchange for those pleas and a finding of guilty by the Court the State would recommend that he receive a sentence of basically nine months with credit for the time he'd served since September 12th or 13th, * * * and that he be ordered to make restitution in full for all of these checks, including the four checks that are not indicted[.]" When asked if this was his understanding of the plea agreement, appellant's counsel replied that it was not, but only insofar as to the four additional "non-indicted" checks. After further negotiation, appellant agreed to make restitution for the additional four checks.
 {¶ 12} The trial court then asked appellant if he understood the terms of the plea agreement. Appellant replied "Yes sir, I believe I do." The trial court further asked appellant if he was satisfied to go forward on that basis. Appellant responded in the affirmative. Appellant also stated that he fully understood everything the parties were talking about. At no time prior to this did appellant question or challenge the state's recommendation of nine months in prison with credit for time served.
 {¶ 13} The alleged confusing statements made by the trial court occurred next as the court attempted to explain to appellant the issues of credit and community control with regard to appellant's sentence:
 {¶ 14} "All right. Now, although there's a recommended sentence and I'm inclined to go along with the recommendation in this matter, I must advise that each of these 26 Counts is a felony of the fifth degree. Each would carry up to 12 months in prison, and each would carry up to a [$2,500] fine. * * * Do you understand that, Mr. Todd?" Appellant replied that he did.
 {¶ 15} "All right. Now, it's been recommended that you would receive a prison sentence of essentially nine months with credit for approximately six months. Do you understand that?" Appellant replied that he did.
 {¶ 16} "Now, it's also recommended that you would be placed under sanctions, community control sanctions, or what we used to call probation for a period of three years. * * * But I must advise you Mr. Todd upon your release from prison you would be subject to post release control or essentially what we used to call parole. It is not required on fifth degree felonies. It is optional at the discretion of the Ohio Adult Parole Authority. However, if they choose to place you under that control they can do so for up to three years on a fifth degree felony. * * * If you violated their rules then as a part of this Court's sentence for each post control violation you could receive an additional prison term of up to four-and-a-half months, being one-half of the nine months. Do you understand that, Mr. Todd?" Appellant replied that he did.
 {¶ 17} The trial court continued: "The most you could receive for multiple post release control violations would also be limited to four-and-a-half months or one-half of the nine months. * * * Do you understand that?" Appellant replied that he did.
 {¶ 18} "Now, I'm going to discuss with you community control sanctions, because upon your release from the prison sentence you will be under sanctions with the Probation Department of this Court." The record shows that as the trial court explained to appellant community control sanctions, appellant conferred several times with his attorney with regard to several statements made by the trial court:
 {¶ 19} "Mr. Todd, we were discussing the post release control. No, we were discussing community control sanctions. And that if you committed an act that violated your community control sanctions with this Court, if the Court felt that a prison sentence was warranted, the Court could sentence you to prison on each of these counts. And essentially you could receive up to twelve months on each[.] I have indicated that my intention would be to run them consecutive sentences only to a cumulative total of two years." Thereafter, after conferring with his client, appellant's counsel told the court that "Mr. Todd has asked that I request that the nine months that will be served be taken off the two years." The state replied that appellant "would get credit for three months, * * * but not the full time." The trial court then explained:
 {¶ 20} "Well, I'm going to specify that for example Counts 2 and 3, if I select one year on each of those consecutive to one another, they'd also be consecutive to Count 1 in which I would impose the six months here this afternoon or whenever we do the sentencing. So he would not get credit in that circumstance." When asked by appellant's counsel "not get credit for the three months, or do we get credit for the six?" the trial court replied: "He would get credit for the three months but not for the six, because that would be time awaiting trial. The six months is a separate sentence which I will specify as consecutive to Counts 2 and 3. * * * The time is running, for example, from September 13th. So if I say nine months, you're getting credit for today, yes. * * * This is a little confusing, I understand that. All right, do you have any other questions, Mr. Todd?" Appellant replied he did not.
 {¶ 21} The trial court then engaged in a discussion with appellant pursuant to Crim.R. 11. Thereafter, when asked if he had any questions about his rights or for the trial court, appellant replied he did not. After appellant pled guilty to the 26 counts of forgery, the trial court noted that appellant "did have some questions, conferred with his counsel * * *, and * * * indicated that all questions were answered to his satisfaction by the Court and/or [his attorney]. I will also find that the terms of the plea agreement were discussed in significant detail, that [appellant] did have a certain amount of input into the formulation of the plea agreement, conferring with [his attorney], [his attorney] in turn conferring with [the state] and actually both Attorneys as well as [appellant] some discourse with the Court."
 {¶ 22} After carefully reviewing the transcript of the plea hearing as well as the guilty plea entry, we find that appellant was never promised by the state or the trial court that he would be sentenced to six months in prison. The state clearly recommended that appellant be sentenced to nine months in prison in exchange for his guilty plea. The trial court told appellant it was inclined to go along with the recommendation, and in fact, did not deviate from the terms of the plea agreement. Nor was appellant promised by the state or the trial court he would be sentenced to three years of community control. While "three years" were mentioned by the trial court, this was only in reference to post release control and the Ohio Adult Parole Authority. It was never in reference to community control sanctions.
 {¶ 23} After reviewing the hearing plea in its entirety, and judging the exchange between the parties and the trial court by objective standards, we find that while appellant may have been mistaken regarding his sentence, we cannot say that he was reasonably justified in his mistaken impression. Appellant conferred at length several times with his attorney during the plea hearing. The state consistently recommended that appellant be sentenced to nine months in prison. The guilty plea entry, signed by the parties' attorneys and the trial court, clearly refers to a sentence of nine months in prison and five years of community control. The trial court thereafter followed the state's recommendation to the letter.
 {¶ 24} We therefore find that despite appellant's current protestations, the trial court did not impose a harsher sentence than the one agreed upon. To the contrary, the trial court imposed exactly the sentence that was agreed upon at the plea hearing and later reduced in the guilty plea entry. Appellant's assignment of error is accordingly overruled.
 {¶ 25} Judgment affirmed.
Powell and Valen, JJ., concur.