OPINION
{¶ 1} Defendant-appellant, Jerrod William Messer, appeals the denial of a motion to suppress by the Clermont County Court of Common Pleas and his subsequent conviction for engaging in a pattern of corrupt activity.
 {¶ 2} Around December 2006, appellant became the target of a multi-jurisdictional methamphetamine investigation. In the midst of the continuing investigation, appellant was detained in the Meijer store located in Eastgate on April 14, 2007 for allegedly shoplifting a *Page 2 
set of stereo speakers. Near the seat where appellant was being held in the store's security area awaiting local law enforcement, an officer allegedly found a small amount of methamphetamine. The resulting charges from that incident were subsequently dropped by the prosecution.
 {¶ 3} After responding to the theft, the arresting officer talked with Agent Marc Sorbello of the Clermont County Sheriff's Office Narcotics Task Force. Agent Sorbello was involved in the continuing investigation of appellant and several associated individuals. After learning of the arrest, Sorbello prepared a lengthy affidavit to obtain a search warrant for appellant's residence located at 6150 Marathon Edenton Road in Blanchester, Ohio.[1] In the affidavit, Sorbello stated that, based upon information he received during the investigation, appellant had been manufacturing methamphetamine, importing marijuana from Texas, engaging in the thefts of a variety of vehicles, and operating a vehicle "chop shop" at the residence. As a result, the affidavit requested a search of the residence, detached garage, and all outbuildings located on the curtilage of the subject premises. Based upon Agent Sorbello's affidavit, Judge James Shriver of the Clermont County Municipal Court issued a search warrant.
 {¶ 4} Officers executed the warrant on April 19, 2007. In addition to evidence of drug possession and manufacturing, several vehicles were found on the premises which were later identified as stolen or having tampered vehicle identification numbers. On July 18, 2007, the Clermont County Grand Jury indicted appellant on 20 counts based upon the evidence discovered at the residence. Appellant was charged with five counts of receiving stolen property valued between $500 and $5,000 in violation of R.C. 2913.51(A), five counts of receiving a stolen motor vehicle in violation of R.C. 2913.51 (A), three counts of possession *Page 3 
of a motor vehicle with a concealed identity in violation of R.C. 4549.62(D)(1), five drug-related offenses, one count of having a weapon under disability in violation of R.C. 2923.13(A)(3), and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1).
 {¶ 5} Appellant filed a motion to suppress, arguing that the search warrant was defective. The trial court overruled the motion, finding that the affiant officer acted in good faith in obtaining the warrant. As a result, appellant entered into a plea agreement, wherein he would enter a plea of no contest to engaging in a pattern of corrupt activity with an agreed-upon sentence of eight years in exchange for dismissal of the remaining charges. Appellant also acknowledged that the guilty finding constituted a community control violation. The trial court found appellant guilty based upon the alleged facts and sentenced appellant to eight years for engaging in a pattern of corrupt activity and four years for the community control violation, with the sentences to run consecutively. Appellant timely appeals, raising four assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED IN ALLOWING EVIDENCE TO BE ADMITTED AS A RESULT OF AN IMPROPER WARRANT."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE TRIAL COURT ERRED IN OVERRULING MR. MESSER'S MOTION TO SUPPRESS THE SEARCH OF HIS PROPERTY."
 {¶ 10} In his first and second assignments of error, appellant challenges the validity of the warrant and argues all evidence recovered during the search should be suppressed.
 {¶ 11} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact, *Page 4 
and therefore, is in the best position to resolve factual questions and evaluate witness credibility. State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Bryson (2001), 142 Ohio App.3d 397,402. The appellate court then determines, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 12} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The exclusionary rule, while not an express mandate found in theFourth Amendment, is inherent in its protective language and "operates as a judicially created remedy designed to safeguardFourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."State v. Cobb, Butler App. No. CA2007-06-153, 2008-Ohio-5210, ¶ 22; United States v. Leon (1984), 468 U.S. 897, 906,104 S.Ct. 3405.
 {¶ 13} A police officer establishes probable cause for a search warrant through an affidavit. Crim. R. 41(C). Thus, a judge properly issues a search warrant if the totality of the circumstances establish a "fair probability that contraband or evidence of a crime will be found in a particular place."Illinois v. Gates (1983), 462 U.S. 213, 238, 103 S.Ct. 2317. The judge makes a probable cause determination through a "practical, common-sense decision." Id. In ruling on a motion to suppress, the trial court must exclude evidence obtained from a search warrant issued without probable cause if the officers did not execute the warrant in good faith. Leon at 924.
 {¶ 14} When reviewing an affidavit in support of a search warrant neither the trial court nor the appellate court should substitute its judgment in the place of the issuing judge by *Page 5 
determining whether there was sufficient probable cause to issue the warrant. State v. Dunihue, 161 Ohio App.3d 731, 2005-Ohio-3223, ¶ 6, citing State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus. A reviewing court need only ensure that the issuing judge had "a substantial basis for concluding that probable cause existed." Id. Furthermore, upon review a court must afford deference to the issuing judge's determination and any doubt "should be resolved in favor of upholding the warrant." Id.
 {¶ 15} Generally, the exclusionary rule requires evidence seized as a result of an illegal search to be suppressed, but it will not be applied simply because the warrant was not supported by probable cause. Cobb at ¶ 22. As the United States Supreme Court held in Leon, the exclusionary rule should not be used to exclude evidence "obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." State v. George, 45 Ohio St.3d 325, 330, citing Leon at 918-923, 926. Instead, the exclusionary rule will remain in effect and be the appropriate remedy where: "(1) the judge or magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the magistrate or judge wholly abandoned his judicial role; (3) an officer purports to rely upon a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) depending upon the circumstances of the particular case, a warrant may be so facially deficient, i.e., in failing to particularize the place or things to be searched or seized, that the executing officers cannot reasonably presume it to be valid." State v. Landis, Butler App. No. CA2005-10-428,2006-Ohio-3538, ¶ 22, quoting George at 331.
 {¶ 16} On appeal, appellant primarily attacks the search of the vehicle identification numbers, arguing that information in the affidavit relating to the stolen vehicles was *Page 6 
unreliable, inadequate, and stale.
 {¶ 17} At the suppression hearing before the trial court, appellant's argument mostly focused on whether probable cause existed to search for the drug-related evidence. Appellant's trial counsel alleged that no methamphetamine was recovered at the Meijer store and the arresting officer's statement to Agent Sorbello was false. Counsel directed the court to review a video recording of the Meijer security area during appellant's detainment, claiming that the recording demonstrated that no methamphetamine could be seen on the floor near where appellant was sitting. As a result, appellant claimed at the trial level that the warrant was defective because appellant was never found in possession of methamphetamine.
 {¶ 18} In his brief in the instant appeal, appellant briefly mentions this alleged falsity, claiming that the warrant was obtained under "false pretenses" and the good faith exception should not apply. Accordingly, before attending to appellant's primary argument, we will first address the allegation of falsity.
Possession of Methamphetamine and Search for Drug-RelatedEvidence
 {¶ 19} Relying upon the United States Supreme Court decision in Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2674, the trial court in this case held, "[c]ounsel for defendant submitted [an] affidavit claiming that the surveillance footage of the defendant's interrogation at the Meijer store did not show any officer finding methamphetamine in that room. The court fails to see the relevance at this phase of the criminal proceedings as to what any video surveillance demonstrates. Agent Sorbello stated that he was informed by fellow officers that methamphetamine was found where the defendant was sitting in the area where he was being held at the Meijer store. The defendant has failed to demonstrate that there was [sic] any false statements that were included knowingly or recklessly in the subject affidavit."
 {¶ 20} In a motion to suppress context, factual questions and witness credibility are *Page 7 
within the purview of the trier of fact, and we must accept the findings if supported by competent, credible evidence.Burnside, 100 Ohio St.3d 152, ¶ 8. Whether methamphetamine was actually found in the Meijer surveillance area near appellant is a question of fact for the trial court's determination. The record in this case contains competent, credible evidence to support the trial court's conclusion.
 {¶ 21} Regarding probable cause to search for methamphetamine and drug-related evidence on the property, we are guided by the recent United States Supreme Court decision inHerring v. United States (2009), ___ U.S. ___, 129 S.Ct. 695. In Herring, the Supreme Court held that the exclusionary rule did not require suppression of drug evidence and illegal possession of a firearm following a search incident to an invalid warrant. Id. at 703. "As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 702.
 {¶ 22} Information stating that appellant was found in possession of methamphetamine at the Meijer store was supplied to Agent Sorbello by the arresting officer. Even if this statement was false because there was no methamphetamine in appellant's possession at the Meijer store, there is no indication that Agent Sorbello knew the statement was false or that he deliberately or recklessly included a false statement in the affidavit. 129 S.Ct. at 702.
 {¶ 23} Further, reviewing the four corners of the affidavit, the information was sufficient to support a finding of probable cause by the issuing judge to search the subject premises for drug-related activity. The affidavit stated that appellant, along with several associated individuals, was the subject of an ongoing investigation for drug activity. Several weeks prior to the Meijer incident, appellant's girlfriend was determined to be the owner of a vehicle that contained a partial methamphetamine lab. Further, an investigation by Agent Sorbello revealed that appellant's girlfriend and other associated individuals were found to have been *Page 8 
purchasing pseudoephedrine in several counties in a structured manner. Agent Sorbello had personal knowledge that appellant's girlfriend resided at the subject address.
 {¶ 24} On April 14, 2007, appellant was detained at the Meijer store and arrested for suspected possession of methamphetamine and theft. Appellant was indicted for possession of methamphetamine relating to that incident, although the charges were later dropped. Moreover, a female fitting the description of appellant's girlfriend was discovered in the Meijer parking lot sitting in a car fitting the description of the car owned by appellant's girlfriend. Agent Sorbello submitted the affidavit, and the warrant was issued, the same day appellant was arrested for possession of methamphetamine. The trial court noted that "[a]ll of this particular information came directly from the affiant officer and did not reference any confidential sources."
 Search of Vehicle Identification Numbers {¶ 25} The primary argument in appellant's brief challenges the search of the vehicle identification numbers. Appellant claims no probable cause existed to search the vehicles. Appellant notes that the affidavit referred to a four-month-long investigation. As a result, appellant submits that the warrant was defective because the only information relating to stolen vehicles was supplied by an "unidentified informant that was not represented as reliable." Further, appellant argues the warrant was stale because there were no facts to support a probable cause finding that stolen vehicles were on the property at the time.
 {¶ 26} The United States Supreme Court and the Ohio Supreme Court have both recognized that there is no reasonable expectation of privacy in vehicle identification numbers and examination thereof does not constitute a "search."
 {¶ 27} Based on the doctrine of plain view and the "pervasive regulation by the government of the automobile * * *, it is unreasonable to have an expectation of privacy in an *Page 9 
object required by law to be located in a place ordinarily in plain view from the exterior of the automobile. The VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment. The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a `search.'" New York v. Class (1986), 475 U.S. 106,114, 106 S.Ct. 960. See, also, State v. Halczyszak (1986),25 Ohio St.3d 301, 306.
 {¶ 28} Moreover, in Halczyszak, the Ohio Supreme Court held that "[t]he mere act of viewing a VIN is not a search within the meaning of the Fourth Amendment so long as police are lawfully in a position to make the observation. Nor can it be rationally concluded that a computer check of the VIN is more violative of theFourth Amendment than viewing it. Consequently we hold that police may make computer checks of lawfully obtained VINs where their purpose is to negate or establish whether the auto is stolen." Id. at 306.
 {¶ 29} The search of the VINs in this case did not violate the Fourth Amendment. As discussed above, the officers executing the warrant were lawfully on the premises to search for drug-related evidence. As a result, the officers could check the VINs of the vehicles located on the property, irrespective of appellant's claims of reliability, staleness or insufficient probable cause.
 {¶ 30} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE TRIAL COURT ERRED IN FINDING MR. MESSER GUILTY OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 33} In his third assignment of error, appellant argues the trial court erred by finding him guilty of engaging in a pattern of corrupt activity. Appellant claims his plea was not made knowingly, intelligently, and voluntarily. Second, appellant argues that his no contest plea *Page 10 
was based upon insufficient facts.
 Plea {¶ 34} Appellant directs this court to the transcript of the plea hearing. After the prosecution read the statement of facts supporting appellant's charge of engaging in a pattern of corrupt activity, the trial court asked, "Mr. Messer, do you have any disagreement with that statement or anything you wish to add?"
 {¶ 35} Appellant replied, "No Sir. It's — I'm pretty much guilty of that."
 {¶ 36} The trial court then asked, "With full understanding of everything that I've gone over with you then, how do you plead then to the charge of Engaging in a Pattern of Corrupt Activity as set forth in Count 20 as amended?"
 {¶ 37} Appellant replied, "No contest, sir."
 {¶ 38} Appellant argues that he did not knowingly, intelligently, and voluntarily enter a no contest plea because he said that he was "pretty much guilty of that." Appellant submits that his response affirmatively demonstrates that he misunderstood the nature of a no contest plea and the trial court should have clarified appellant's statement to ensure that he understood his plea.
 {¶ 39} The basic tenets of due process require that a plea in a criminal case be made "knowingly, intelligently, and voluntarily." State v. Engle, 74 Ohio St.3d 525, 527,1996-Ohio-179. "Failure on any of th[e]se points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." Id. A determination of whether a plea is knowing, intelligent, and voluntary is based upon a review of the record. State v. Spates (1992),64 Ohio St.3d 269, 272. If a criminal defendant claims that his guilty plea was not knowingly, voluntarily, and intelligently made, the reviewing court must review the totality of the circumstances in order to determine whether or not the defendant's claim *Page 11 
has merit. State v. Nero (1990), 56 Ohio St.3d 106, 108.
 {¶ 40} In viewing the totality of the circumstances, appellant's plea was knowingly, intelligently, and voluntarily made. The trial court in this case engaged in a full Crim. R. 11 colloquy with appellant, informing appellant of the effect of each type of plea. Appellant acknowledged, and the record demonstrates, that he fully understood the effect of a no contest plea. Further, appellant's statement that he was "pretty much guilty of that" was not admitting guilt to the offense or entering a guilty plea to the charge. Instead, the statement was made in response to the facts alleged against him by the prosecution. Following appellant's admission of the facts, the trial court asked for appellant's plea, which appellant responded "no contest."
 {¶ 41} Merely because appellant did not articulate his words precisely or correctly, does not mean that he did not understand the plea. Appellant subjectively understood the implications of his plea. State v. Rohda, Lucas App. Nos. L-05-1278, L-05-1280,2006-Ohio-6463, ¶ 23.
 {¶ 42} Additionally, appellant fails to show any prejudicial effect. State v. Nero (1990), 56 Ohio St.3d 106, 108. Appellant never claims that the plea would not have been made or that he wishes to now change his plea.
 Sufficiency {¶ 43} Next, appellant argues that insufficient facts were presented to support the elements of the offense. Namely, appellant claims that the record contains no proof of venue and no proof that predicate offenses were committed "while employed by, associated with, any enterprise conducted or participated in, directly or indirectly, the affairs of the enterprise." R.C. 2923.32(A)(1).
 {¶ 44} Under Crim. R. 11, a trial court is not required to receive an explanation of the *Page 12 
circumstances in a felony case, and may rely upon the facts alleged in the indictment to enter judgment against a defendant. State v.Watson, Clinton App. No. CA2007-04-020, 2008-Ohio-629, ¶ 9. In this case, the indictment included all of the elements of the offense. Additionally, however, the recitation of facts by the prosecution at the plea hearing also included sufficient facts to demonstrate all elements of the offense, including those elements appellant challenges. Specifically, the prosecution alleged that the illegal activity at issue occurred at appellant's residence in Clermont County and that appellant engaged in a pattern of activity involving stolen vehicles, drug possession and drug trafficking with associated individuals.
 {¶ 45} Based on the foregoing, appellant's third assignment of error is overruled.
 {¶ 46} Assignment of Error No. 4:
 {¶ 47} "THE TRIAL COURT VIOLATED THE PLEA BARGAIN."
 {¶ 48} In his final assignment of error, appellant argues the trial court erred by sentencing him to a total of 12 years in prison. Appellant argues that, under the plea bargain, the trial court erred by deviating from the agreed-upon sentence of eight years. The decision whether to accept or to reject a plea bargain rests within the sound discretion of the trial court. State v.Asberry, 173 Ohio App.3d 443, 2007-Ohio-5436, ¶ 40, citing Inre Disqualification of Mitrovich (1990), 74 Ohio St.3d 1219. A plea agreement is contractual in nature. State v. Todd, Brown App. No. CA2003-01-001, 2004-Ohio-2902, ¶ 8. The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement. Id. The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement. Id.
 {¶ 49} We first note that, following the sentencing, no objection was made to the trial court for failure to follow the plea agreement. Moreover, appellant signed a plea agreement form. The form included the statement, "Though the parties agree to an 8 (eight) year *Page 13 
sentence it is with the understanding the court can depart in either direction if it deems appropriate." Moreover, at the plea hearing, the trial court acknowledged that appellant and the state agreed upon an eight-year sentence, but also informed appellant "[t]he court is not bound to impose that sentence." Clearly, appellant received notice, and acknowledged, that the trial court could deviate from the agreed-upon sentence in the plea agreement. As a result, we find no violation of the plea bargain by the trial court.
 {¶ 50} Appellant's fourth assignment of error is overruled.
 {¶ 51} Judgment affirmed.
BRESSLER, P.J., and WALSH, J., concur.
[1] The property is owned by appellant's father, who was incarcerated during the events of this case. Appellant had power of attorney for the property. *Page 1