[Cite as *State v. Rose*, 2016-Ohio-5289.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                                      :

    Plaintiff-Appellee,                       :            CASE NO.   CA2015-08-016

                                                   :            O P I N I O N
    - vs -                                                          8/8/2016

                                                   :

JAMES C. ROSE,                                     :

    Defendant-Appellant.                       :


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 11753


Martin P. Votel, Preble County Prosecuting Attorney, Gractia S. Manning, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

John H. Forg III, P.O. Box 72, West Chester, Ohio 45069, for defendant-appellant


    **RINGLAND, J.**

    {¶ 1}   Defendant-appellant, James C. Rose, appeals the decision of the Preble County Court of Common Pleas denying his motion to suppress, as well as his convictions involving the illegal manufacture, assembly, and possession of drugs.   For the reasons detailed below, we affirm.

    {¶ 2}   The Preble County Sheriff's Department received information that Rose was operating a meth lab at his residence located at 10164 County Road 335.  The complaints

were referred to Deputy Plaugher who investigated the matter and supplied the factual information contained in the affidavit to obtain a search warrant for Rose's residence.

{¶ 3} The affidavit contained information regarding Rose's history with methamphetamine, including a prior conviction for aggravated trafficking in drugs. In addition, Rose had previously been involved in a traffic stop where he was seen leaving another property that was the focus of a search warrant that revealed the existence of a meth lab. There was also information supplied by a confidential informant that Rose was known to be a "big meth cook" in the area. The confidential informant was aware of Rose's methamphetamine operation because a relative had been to Rose's residence and had possibly been providing Rose with pseudoephedrine pills.

{¶ 4} Acting on this information, Deputy Plaugher and other Preble County Sheriff Deputies conducted a trash pull on Rose's property. The testimony reflected that deputies pulled the trash from the end of Rose's driveway and discovered empty blister packs of pseudoephedrine pills, ammonia, empty cans of paint thinner, paper towels testing positive for ammonia, lithium battery casings, syringes, and mail addressed to Rose at 10164 County Road 335. Deputy Plaugher averred that the evidence recovered from the trash pull is consistent with items used in the methamphetamine manufacturing process.

{¶ 5} A search warrant was authorized for Rose's residence. A search of the residence uncovered methamphetamine and evidence of a meth lab leading to the charges pertinent to this appeal. Rose moved to suppress the evidence seized from his residence and also moved for a *Franks* hearing.[1] Following an evidentiary hearing on both motions, the trial court denied Rose's motion to suppress. Thereafter, Rose entered a plea of no contest and was sentenced to 11 years in prison. Rose now appeals, raising two assignments of

---

1. We will use the term *Franks* hearing to refer to Rose's challenge to the validity of the affidavit offered in support of the search warrant. *State v. Sekse*, 12th Dist. Preble No. CA2015-07-015, 2016-Ohio-2779, ¶ 9, citing *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674 (1978).

error for review:

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE OBTAINED IN THE SEARCH OF DEFENDANT'S RESIDENCE, AS THE SUPPORTING AFFIDAVIT SUBMITTED IN SUPPORT [OF] THE SEARCH WARRANT KNOWINGLY OR RECKLESSLY MISREPRESENTED FACTS NECESSARY TO ESTABLISH PROBABLE CAUSE.

{¶ 8} In his first assignment of error, Rose argues the trial court erred by denying his motion to suppress. Specifically, Rose claims the search of his residence was conducted without probable cause, as the affidavit offered in support of the search warrant "knowingly or recklessly" misrepresented the facts. Rose alleges that, absent the inclusion of facts related to the trash pull, no reasonable magistrate could conclude that Rose was engaged in criminal activity at his residence. We disagree.

{¶ 9} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 8. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

{¶ 10} "In determining whether probable cause exists for the issuance of a warrant,

- 3 -

courts employ a 'totality-of-the-circumstances' test, requiring an issuing judge 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Landis*, 12th Dist. Butler No. CA2005-10-428, 2006-Ohio-3538, ¶ 12, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus. Evidence that is obtained in violation of the Fourth Amendment is subject to exclusion. *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 12.

{¶ 11} A police officer establishes probable cause for a search warrant through an affidavit. *State v. Messer*, 12th Dist. Clermont No. CA2008-04-039, 2009-Ohio-929, ¶ 13; Crim.R. 41(C). "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either intentionally, or with the reckless disregard for the truth." *Bell*, 2009-Ohio-2335 at ¶ 16. Omissions count as false statements if they were "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." *Id* at ¶ 9; *State v. Rogers*, 12th Dist. Butler No. CA2006-03-055, 2007-Ohio-1890, ¶ 46. However, a search warrant is still valid even though it is based on an affidavit containing false statements or omissions, unless, after including the omissions, "the affidavit's remaining content is insufficient to establish probable cause." *Bell* at ¶ 9.

{¶ 12} Based on our review of the record, we find the trial court did not err by denying Rose's motion to suppress. Rose failed to prove that Deputy Plaugher made any false statement that either intentionally or recklessly disregarded the truth. Rose also failed to prove that any alleged omission in the affidavit was made in reckless disregard of the truth or was designed to mislead. Rather, based on the "totality of the circumstances," there was ample evidence to support a finding of probable cause to issue the search warrant of his

residence.

{¶ 13}   Despite this, Rose argues the trial court's decision was impro7per due to perceived inconsistencies and inadequacies in the handling of the trash pull; specifically, the existence or nonexistence of mail that was found in the trash.  In support of this claim, Rose notes that he burns all of his trash, multiple persons also use the same location to dispose of their trash, he shares a similar name with his father, and mail addressed to his father and to other properties was also discovered during the trash pull.[2]  As a result, Rose argues that there is no evidence connecting him to the methamphetamine-related instrumentalities discovered during the trash pull and (1) Deputy Plaugher deliberately omitted that they had also recovered mail addressed to a separate property, and (2) Deputy Plaugher falsely testified that he had recovered mail from the trash pull addressed to James C. Rose.

{¶ 14}   Although Rose places much emphasis on the issue of the mail and argues that the absence of any letter specifically addressed to Rose denies authorities the necessary link between the meth lab and the adjoining properties, we find the record belies these assertions.  Deputy Plaugher and Detective Schneider testified that they did not find it significant that a letter addressed to Rose's father was found in the trash. The deputies were aware that Rose's residence was adjoined by several properties and that his father lived nearby and shared the same first and last name.  However, the deputies also testified that they took the trash at the end of Rose's driveway and, as far as they knew, the property was being used as a single-family residence.  As explained by Deputy Plaugher:

> A.  I found mail addressed to [Rose] in the trash, to James C. Rose at 10164 County Road 335.  I also found mail in the trash that was addressed to his father at 10198 County Road 335 and I believe 10196 County Road 335, but that mail didn't have a name on it.
>     It did not stand out to me that dad's mail could be in the trash. Maybe Chad goes down to the junkyard where the, where the mail is addressed to and brings the mail back. It didn't stand

---

2. Rose also testified that he goes by the name Chad Rose, or formally, J. Chad Rose.

out to me that dad's mail was in the trash.

Q. All right. So can you explain to the Court why, where these properties are in relation to each other and why you did not find that to be significant?

A. 10164, if you look at the property, immediately to the west of that is 10196 and then immediately to the west of that is 10198. 10196 is a vacant residence. By all appearances nobody lives there. At home I occasionally get junk mail that is supposed to, that's addressed to my neighbor. I didn't find it odd that there was trash, or I'm sorry, mail in the trash that belonged to 10196. And being that James D. Rose is his father, he lives, or owns, * * *, the property, the junkyard two doors down, I didn't find it odd that dad's mail was in the trash.

Furthermore, there was additional information already corroborating the fact that Rose lived at that residence and the trash pull investigation was more focused on finding methamphetamine and related instrumentalities, rather than pieces of mail. We find that Rose has simply failed to prove that any statement or perceived omission in Deputy Plaugher's affidavit was intentionally or recklessly false or designed to mislead.

{¶ 15} In so doing, we also note that the affidavit contained ample other evidence to support a finding of probable cause. As previously noted, the affidavit contained information that Rose had a history with methamphetamine, including criminal charges. There was information from a confidential informant that stated Rose was a "big meth cook" in the area. The confidential informant also noted that a relative had been to Rose's residence and had possibly been providing Rose with pseudoephedrine pills. In addition, the affidavit contained evidence that just months prior to the issuance of the search warrant, Rose had been seen leaving a property that contained a meth lab immediately prior to the execution of a search warrant.

{¶ 16} Rose issues a number of challenges regarding the other factual information contained in the Deputy Plaugher's affidavit; however, those arguments are without merit. The information related to Rose's history with methamphetamine, including a 2012 conviction

for aggravated trafficking in drugs, was clearly not stale or irrelevant. Additionally, the information supplied by the confidential informant contained some basis to indicate the informant was reliable and credible. *See, e.g., State v. Thompson*, 12th Dist. Butler No. CA2013-08-158, 2014-Ohio-3380, ¶ 16 ("totality of the circumstances" test used in determining confidential information reliability and credibility).

{¶ 17} In conclusion, we find the trial court did not err in denying Rose's motion to suppress. The issuing judge had a substantial basis for concluding that probable cause existed based on the information contained in Deputy Plaugher's affidavit and Rose failed to prove that any statement contained therein was intentionally or recklessly false or designed to mislead. Therefore, Rose's arguments to the contrary are without merit and his first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED IN DENYING THE MOTION TO DISMISS THE SUPERSEDING INDICTMENT, AS THE DESTRUCTION OF EXCULPATORY EVIDENCE DEPRIVED DEFENDANT OF DUE PROCESS.

{¶ 20} In his second assignment of error, Rose claims the trial court erred by denying his motion to dismiss because the state destroyed materially exculpatory evidence. We again disagree.

{¶ 21} "Depending on the nature of the evidence, different tests are applied to determine whether the state's failure to preserve evidence amounts to the level of a due process violation." *State v. Gatliff*, 12th Dist. Clermont No. CA2012-06-045, 2013-Ohio-2862, ¶ 40, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 73-77. The state's failure to preserve "materially exculpatory" evidence, regardless of whether such failure was done in good faith or bad faith, violates due process. *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528 (1984). Evidence is constitutionally material when it possesses "an

exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Powell* at ¶ 74. The defendant bears the burden to show that the evidence was materially exculpatory. *Id.*

{¶ 22} "[A] different rule is used when the evidence is merely 'potentially useful.'" *Id.* at ¶ 41, quoting *State v. Geeslin*, 116 Ohio St .3d 252, 2007-Ohio-5239 at ¶ 910. "'Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *State v. Hamilton*, 12th Dist. Clinton No. CA2014-07-010, 2015-Ohio-1704, ¶ 11, quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333 (1988). Bad faith implies more than bad judgment or negligence, rather "[i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Powell* at ¶ 81.

{¶ 23} After review, we conclude that Rose's due process rights were not violated when the state failed to preserve the mail seized from the trash pull. As an initial matter, we disagree with Rose's assertion that the mail was materially exculpatory. In his brief, Rose argues that the items taken from the trash pull were "material to the issue of probable cause." However, neither the letters nor any of the remaining items taken from the trash possessed any exculpatory value. As noted above, the evidence gathered from the trash pull was only one piece of evidence used to establish the probable cause necessary to support the issuance of the search warrant. The mail could not be used to establish Rose's guilt or innocence regarding the manufacture of methamphetamine. *See State v. Geeslin*, 116 Ohio St. 3d 252, 2007-Ohio-5239, ¶ 13.

{¶ 24} Because the items did not provide any materially exculpatory evidence, we now address whether the items would be potentially useful and whether the evidence was

destroyed in bad faith. *Gatliff*, 2013-Ohio-2862 at ¶ 43. However, even assuming that the items taken from the trash pull would be potentially useful, Rose failed to prove that any evidence was destroyed in bad faith. Rather, the record reflects that Deputy Plaugher and Detective Schneider conducted the trash pull, focusing primarily on the existence of methamphetamine-related items.

{¶ 25} Although the mail was discarded, Deputy Schneider testified that it was "just not common practice for us to save the trash from the trash pull. We photograph it and we throw it away." The evidence presented by Deputy Plaugher and Detective Schneider supports the position that the items offered limited, if any, evidentiary value to the case and it was standard practice to discard the relevant items. Moreover, as noted above, the letters were only one piece of evidence used in the probable cause determination. Rose has not shown the state acted in bad faith necessary to support his allegations that he was deprived of due process. Accordingly, we find the trial court did not err in denying Rose's motion to dismiss based on alleged due process violations. Rose's second assignment of error is similarly without merit and overruled.

{¶ 26} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.